# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| WILLIAM FADUIE, ANDREW MUNGER, TOBY CLARKSON GARDNER, and KESTON LEWIS, | Case No.: 5:23-cv-00337 |
| Plaintiffs, | |
| v. | JUDGE DAVID A. RUIZ |
| MATCO TOOLS CORPORATION, | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... iii

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................1

III.  STANDARD OF REVIEW ...................................................................................2

    A.   Rule 12(b)(1) Standard ............................................................................2

    B.   Rule 12(b)(6) Standard ............................................................................3

IV.  LAW AND ARGUMENT .....................................................................................3

    A.   There is no choice-of-law issue, and a choice-of-law analysis is unnecessary ............3

    B.   Plaintiffs Have Article III Standing ........................................................4

        i.     Plaintiffs Have Suffered Concrete Injuries Caused by a Substantial Risk of Imminent Harm ................................................................................4

        ii.    Plaintiffs Have Been Injured from the Invasion of Their Privacy ........6

        iii.   Plaintiffs Have Lost or Been Deprived of the Value of Their PII ........7

        iv.   Plaintiffs Have Lost the Benefit of Their Bargain with Matco ...........8

    C.   Plaintiffs Have Adequately Stated a Claim for Negligence ...........................9

        i.     Plaintiffs Sufficiently Have Alleged Misuse of PII ...........................9

        ii.    Consequences from Risk of Harm ....................................................11

        iii.   Diminished Value of PII ...................................................................12

        iv.   Benefit of the Bargain ......................................................................12

        v.     Loss of Privacy ................................................................................13

    D.   Plaintiffs Have Adequately Stated a Claim for Breach of Implied Contract ...........14

    E.   Plaintiffs Have Adequately Stated a Claim for Unjust Enrichment ...........16

    F.   Plaintiffs Have Adequately Stated a Claim for Negligence Per Se ...........18

        i.     Plaintiffs Munger and Lewis sufficiently allege a "consumer transaction" under the CSPA .......................................................18

        ii.    Plaintiffs Lewis and Faduie sufficiently allege negligence *per se* premised on violations of the FTC Act ....................................19

    G.   Plaintiffs Are Entitled to Declaratory Judgment ..............................20

V.    CONCLUSION ....................................................................................................20

CERTIFICATE OF SERVICE .........................................................................................23

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Allgood v. PaperlessPay Corp.*,
   No. 3:20-CV-516-MMH-MCR, 2022 WL 846070 (M.D. Fla. Mar. 22, 2022)................. 10, 11

*Anderson v. Hannaford Bros. Co*.,
   659 F.3d 151 (1st Cir. 2011) ................................................................................................ 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 3

*Aspen Am. Ins. Co. v. Blackbaud, Inc.*,
   No. 3:22-CV-44 JD, 2022 WL 3868102 (N.D. Ind. Aug. 30, 2022) ...................................... 12

*Attias v. CareFirst, Inc.*,
   365 F. Supp. 3d 1 (D.D.C. 2019),
   *on reconsideration in part*, 518 F. Supp. 3d 43 (D.D.C. 2021) ................................................ 11

*Bohnak v. Marsh & McLennan Cos., Inc.*,
   No. 22-319, 2023 WL 5437558 (2d Cir., Aug. 24, 2023) ....................................................... 7, 9

*Bowen v. Paxton Media Grp., LLC*,
   No. 5:21-CV-00143-GNS, 2022 WL 4110319 (W.D. Ky. Sept. 8, 2022) ....................... 5, 6, 17

*Brickman v. Maximus, Inc.*,
   No. 2:21-CV-3822, 2022 WL 16836186 (S.D. Ohio May 2, 2022) ......................................... 5

*Bridgewater v. Americold Logistics, LLC*,
   No. 21-1348, 2022 WL 1442981 (C.D. Ill. May 6, 2022) ...................................................... 10

*Bucy v. Pennymac Loan Servs.*, LLC,
   No. 2:15-CV-2909, 2016 WL 5719804 (S.D. Ohio Sept. 30, 2016) ....................................... 19

*Carroll v. Lee*,
   148 Ariz. 10 (1986) ............................................................................................................... 15

*Castillo v. Seagate Tech., LLC*,
   No. 16-cv-01958, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) .......................................... 15

*Clemens v. ExecuPharm Inc.*,
   48 F.4th 146 (3d Cir. 2022) ................................................................................................... 10

*Daily v. Craigmyle & Son Farms, LLC*,
   177 Ohio App.3d 439, 894 N.E.2d 1301 (4th Dist. 2008) ...................................................... 17

*Dieffenbach v. Barnes & Noble, Inc.*,
    887 F.3d 826 (7th Cir. 2018) .................................................................................. 9

*Elmer v. S.H. Bell.Co.*,
    127 F. Supp.3d 812 (N.D. Ohio 2015) ................................................................... 12

*Erickson v. Pardus*,
    551 U.S. 89 (2007) .................................................................................................. 3

*Est. of Sample through Cornish v. Xenos Christian Fellowship, Inc.*,
    2019-Ohio-5439, 139 N.E.3d 978 (10th Dist.) ....................................................... 4

*Everhart v. Colonial Pipeline Co.*,
    No. 1:21-CV-3559-MHC, 2022 WL 3699967 (N.D. Ga. July 22, 2022) ................. 11

*Farmer v. Humana, Inc.*,
    No. 8:21-CV-1478-MSS-SPF, 2022 WL 732126 (M.D. Fla. Jan. 25, 2022) .......... 15

*Feins v. Goldwater Bank NA*,
    No. CV-22-00932-PHX-JJT, 2022 WL 17552440 (D. Ariz. Dec. 9, 2022) ............ 12

*Finesse Express, LLC v. Total Quality Logistics, LLC*,
    No. 1:20-CV-235, 2021 WL 1192521 (S.D. Ohio Mar. 30, 2021) ..................... 7, 12

*Foster v. Health Recovery Servs.*, Inc.,
    493 F. Supp. 3d 622 (S.D. Ohio 2020) ............................................................. 14, 17

*Galaria v. v. Nationwide Mut. Ins. Co.*,
    663 Fed. Appx. 384 (6th Cir. 2016) ...................................................................... 5, 6

*Gebhart v. United States*,
    172 Ohio St. 200, 174 N.E.2d 615 (1961) ............................................................. 14

*Gilbert v. BioPlus Specialty Pharm. Servs., LLC*,
    No. 6:21-CV-2158-RBD-DCI, 2023 WL 3555006 (M.D. Fla. Mar. 3, 2023) ......... 11

*Glasgow v. Beers*,
    No. 5:21-CV-2001, 2022 WL 4599229 (N.D. Ohio Sept. 30, 2022) ....................... 3

*Glidden Co. v. Lumbermens Mut. Cas. Co.*,
    112 Ohio St. 3d 470, 2006-Ohio-6553, 861 N.E.2d 109 ........................................ 3

*Hambleton v. R.G. Barry Corp.*,
    12 Ohio St.3d 179, 465 N.E.2d 1298 (1984) ........................................................ 17

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
    No. CV 19-MD-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) .......................... 9

*In re Arby's Rest. Grp. Inc. Litig.,*
No. 1:17-CV-0514, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) ..................................... 15, 19

*In re Arthur J. Gallagher Data Breach Litig.,*
631 F. Supp. 3d 573 (N.D. Ill. 2022) .................................................................... 13

*In re Banner Health Data Breach Litig.,*
No. CV-16-02696-PHX-SRB, 2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ........................ 10

*In re Cap. One Consumer Data Sec. Breach Litig.,*
488 F. Supp. 3d 374 (E.D. Va. 2020) .................................................................... 17

*In re Equifax, Inc., Customer Data Sec. Breach Litig.,*
362 F. Supp. 3d 1295 (N.D. Ga. 2019) ............................................................. 17. 19

*In re Intel Corp. CPU Mktg., Sales Practices & Prods. Liability Litig.,*
No. 3:18-2828, 2020 WL 1495304 (D. Or. Mar. 27, 2020)...................................... 13

*In re Marriott Intl., Inc., Customer Data Sec. Breach Litig.,*
440 F. Supp. 3d 447 (D. Md. 2020) ............................................................... passim

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,*
603 F. Supp. 3d 1183 (S.D. Fla. 2022) ..................................................................... 8

*In re Pawn Am. Consumer Data Breach Litig.,*
No. 21-CV-2554 (PJS/JFD), 2022 WL 3159874 (D. Minn. Aug. 8, 2022)........................ 6, 7

*In re Rutter's Inc. Data Sec. Breach Litig.,*
511 F. Supp. 3d 514 (M.D. Pa. 2021) .............................................................. 17, 20

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,*
No. 3:19-cv-2284, 2020 WL 2214152 (S.D. Cal. May 7, 2020) ..................................... 15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
996 F. Supp 2d 942 (S.D. Cal. 2014).................................................................... 12

*In re Target Corp. Data Sec. Breach Litig.,*
66 F. Supp. 3d 1154 (D. Minn. 2014) ............................................................... 16, 17

*In re: Netgain Tech., LLC,*
No. 21-CV-1210 (SRN/LIB), 2022 WL 1810606 (D. Minn. June 2, 2022)............................ 4

*In re: The Home Depot, Inc. Customer Data Sec. Breach Litig.,*
No. 1:14-MD-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18, 2016)............................. 19

*Leonard v. McMenamins, Inc.,*
No. 2:22-CV-00094-BJR, 2022 WL 4017674 (W.D. Wash. Sept. 2, 2022) ............................ 7

*Lewert v. P.F. Chang's China Bistro, Inc.*,
   819 F.3d 963 (7th Cir. 2016) ................................................................... 10

*Linman v. Marten Transport, Ltd.*,
   No. 22-CV-204-JDP, 2023 WL 2562712 (W.D. Wis. Mar. 17, 2023)....................................... 9

*Lochridge v. Quality Temp. Servs., Inc.*,
   No. 22-CV-12086, 2023 WL 4303577 (E.D. Mich. June 30, 2023) ....................................5-6

*Mackey v. Belden, Inc.*,
   No. 4:21-CV-00149-JAR, 2021 WL 3363174 (E.D. Mo. Aug. 3, 2021) ................................ 16

*Macula v. Lawyers Title Ins. Corp.*,
   No. 1:07 CV 1545, 2008 WL 3874686 (N.D. Ohio Aug. 14, 2008) ....................................... 14

*Mendoza v. J.M. Smucker Co.*,
   No. 5:22-CV-02281, 2023 WL 3588280 (N.D. Ohio May 22, 2023) ...................................... 3

*Moir v. Greater Cleveland Reg'l Transp. Auth.*,
   895 F.2d 266 (6th Cir. 1990) ..................................................................... 2

*Moore v. Weinstein Co., LLC*,
   545 F. App'x 405 (6th Cir. 2013)................................................................. 3

*Nichols v. Muskingum College*,
   318 F.3d 674 (6th Cir. 2003) ..................................................................... 2

*O'Boyle v. Real Time Resolutions, Inc.*,
   910 F.3d 338 (7th Cir. 2018) .................................................................... 20

*Opris v. Sincera Reprod. Med.*,
   No. CV 21-3072, 2022 WL 1639417 (E.D. Pa. May 24, 2022) ................................... 11, 12, 20

*Perry v. Bay & Bay Transport. Servs., Inc.*,
   No. CV 22-973 (JRT/ECW), 2023 WL 171885 (D. Minn. Jan. 12, 2023)........................... 8, 13

*Purvis v. Aveanna Healthcare, LLC*,
   563 F. Supp. 3d 1360 (N.D. Ga. 2021) ........................................................... 19

*Rand v. Travelers Indem. Co.*,
   No. 21 CV 10744 (VB), 2022 WL 15523722 (S.D.N.Y. Oct. 27, 2022) ............................... 20

*Randleman v. Fid. Nat'l Title Ins. Co.*,
   465 F. Supp. 2d 812 (N.D. Ohio 2006)........................................................... 14

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) ................................................................. 6, 10

*Resnick v. AvMed, Inc.*,
   693 F.3d (11th Cir. 2012) ................................................................. 15-16

*Sackin v. TransPerfect Global, Inc.*,
   278 F. Supp. 3d 739 (S.D.N.Y. 2017).......................................... 16, 17-18

*Schneider Nat'l Transp. v. Ford Motor Co.*,
   280 F.3d 532 (5th Cir. 2002) ....................................................................... 3

*Shelton v. Direct Energy, L.P.*,
   No. 1:19-CV-0081, 2019 WL 4194179 (N.D. Ohio Aug. 27, 2019)........................... 2

*Smallman v. MGM Resorts Intl.*,
   638 F. Supp. 3d 1175 (D. Nev. 2022) ................................................. 8, 13

*Smith v. A.B. Bonded Locksmith, Inc.*,
   143 Ohio App.3d 321, 757 N.E.2d 1242 (1st Dist. 2001) .................................. 13-14

*Stollenwerk v. Tri- West Health Care Alliance*,
   254 Fed. Appx. 664 (9th Cir. 2007) ........................................................ 10

*Streater v. Cox*,
   336 Fed. App'x 470 (6th Cir. 2009) ......................................................... 3

*Tracy v. Elekta, Inc.*,
   No. 1:21-CV-02851-SDG, 2023 WL 4677021 (N.D. Ga. Mar. 31, 2023) ........................ 11, 19

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021).......................................................... 5, 6, 7

*Webb v. Injured Workers Pharm., LLC*,
   72 F.4th 365 (1st Cir. 2023).................................................................. 6

<u>Rules</u>

Fed. R. Civ. P. 12(b)(1)..................................................................... 2, 4

Fed. R. Civ. P. 12(b)(6)..................................................................... 3

## I.     INTRODUCTION

Plaintiffs William Faduie, Andrew Munger, Toby Clarkson Gardner, and Keston Lewis ("Plaintiffs") respond in opposition to Defendant Matco Tools Corporation's ("Defendant" or "Matco") Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (Doc. 11) and its Memorandum in Support of its Motion to Dismiss ("MTD", Doc. 11-1). The MTD largely ignores the facts Plaintiffs allege in the Consolidated Class Action Complaint ("CAC", Doc. 9) and misconstrues data breach case law within the Sixth Circuit and around the country to reach the unsubstantiated and erroneous conclusion that Plaintiffs' CAC should be dismissed in its entirety. As shown below, Plaintiffs' have Article III standing to pursue their data breach claims and have adequately pleaded the various legal claims. Defendant's Motion lacks merit and should be denied.

## II.    STATEMENT OF FACTS

According to the operative Complaint, Defendant "provides mechanics and auto enthusiasts best-in-class service for premium tools, storage, and equipment." CAC, ¶ 2. Prior to and through March 1, 2022, Defendant collected the information of more than 14,000 individuals, including their names, Social Security numbers, driver's license numbers, and/or financial account information ("personally identifiable information" or "PII"), and stored that information, unencrypted, in an Internet-accessible environment on Defendant's network. *Id.* ¶¶ 1, 3-4, 144.

On or before December 8, 2022, Defendant learned of a data breach on its network that occurred on or around March 1, 2022 (the "Data Breach"). *Id.* ¶ 5. On or around January 26, 2023, Defendant began notifying various states Attorneys General, Plaintiffs, and other impacted individuals of the Data Breach. *Id.* ¶ 7-8. Defendant reported to the Attorney General of Maine that 14,342 individuals were impacted by the Data Breach. *Id.* ¶ 144.

Plaintiffs spent time mitigating the risks arising from the Data Breach by verifying the

1

legitimacy of the Notice of Data Security Incident and self-monitoring their accounts. *Id.* ¶¶ 115, 125, 133. Plaintiffs have suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and have anxiety and increased concerns for the loss of their privacy. *Id.* ¶¶ 108, 118, 128, 136. Plaintiffs have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their PII, especially their Social Security number and driver's license number, being placed in the hands of unauthorized third parties and possibly criminals. *Id.* ¶¶ 109, 119, 129, 137.

After the Data Breach, Plaintiff Munger was notified that an unknown individual using his identity applied for an automobile loan with Ally Financial in May 2022, just weeks after the Data Breach occurred. *Id.* ¶ 114. Moreover, following the Data Breach, Plaintiff Clarkson Gardner was notified that he was the victim of identity theft, as some unidentified individual residing in California attempted to make a purchase using his bank account following the breach. *Id.* ¶ 123. In fact, around March 2022, Plaintiff Clarkson Gardner received a telephone call from Points West Community Bank regarding certain fraudulent transactions he did not authorize. *Id.* ¶ 124.

## III.   STANDARD OF REVIEW

### A.   Rule 12(b)(1) Standard

"Civil Rule 12(b)(1) allows for dismissal of a claim for 'lack of subject-matter jurisdiction." *Shelton v. Direct Energy, L.P.*, No. 1:19-CV-0081, 2019 WL 4194179, at *2 (N.D. Ohio Aug. 27, 2019) (quoting Fed. R. Civ. P. 12(b)(1)). "In ruling on such a motion, the court must determine whether it has jurisdiction over the subject matter." *Id.* (citing *Moir v. Greater Cleveland Reg'l Transp. Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). When the defendant challenges subject matter jurisdiction through a motion to dismiss, plaintiff bears the burden of establishing jurisdiction. *Id.* (citing *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

### B. Rule 12(b)(6) Standard

"When ruling upon a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), a court must accept as true all the factual allegations contained in the complaint." *Glasgow v. Beers*, No. 5:21-CV-2001, 2022 WL 4599229, at *1 (N.D. Ohio Sept. 30, 2022) (citing *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Streater v. Cox*, 336 Fed. App'x 470, 474 (6th Cir. 2009)). Nonetheless, a court need not accept conclusions of law as true, and considers the motion pursuant to the following standard:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."

*Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV. LAW AND ARGUMENT

### A. There is no choice-of-law issue, and a choice-of-law analysis is unnecessary

Defendant's choice-of-law argument is wholly unnecessary. There is no conflict of law identified, so no choice of law analysis is required. "In Ohio, 'an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken.'" *Mendoza v. J.M. Smucker Co.*, No. 5:22-CV-02281, 2023 WL 3588280, at *8 (N.D. Ohio May 22, 2023) (quoting *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St. 3d 470, 2006-Ohio-6553, 861 N.E.2d 109, at ¶ 25); *see also Moore v. Weinstein Co., LLC*, 545 F. App'x 405, 411 (6th Cir. 2013). "If the laws of the states do not conflict, then no choice-of-law analysis is necessary." *Id.*, (quoting *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002)). Matco

doesn't even argue there is an actual conflict, and its argument about choice-of-law is superfluous.[1]

Second, Defendant incorrectly assumes that only one state's law (the law of each Plaintiff's home state) applies to all the claims brought by each Plaintiff in this case. Defendant ignores that Ohio applies depacage. "Ohio courts may engage in depecage, when appropriate, as part of the choice-of-law analysis." *Est. of Sample through Cornish v. Xenos Christian Fellowship, Inc*., 2019-Ohio-5439, 139 N.E.3d 978, at ¶ 26 (10th Dist.). This means Ohio expressly allows one state's law for one claim, and another state's law for another. Even if Defendant is correct (which it is not) that the laws of the home states of Plaintiffs apply to any one claim asserted (i.e., a claim where there is an actual conflict demonstrated), that is not true for all claims. Unless and until an actual conflict is demonstrated, the Court can and should ignore Matco's unilateral declaration that it is applying the law of the Plaintiffs' home states to this motion.

## B.    Plaintiffs Have Article III Standing

Defendants challenge the Article III standing of Plaintiffs Faduie and Lewis on the basis that they "do not allege their information was misused due to the Incident," arguing that substantially increased risk of harm, time, and effort to mitigate risk, future expenses, emotional distress, lost benefit of bargain, and diminished value of PII are all insufficient to confer standing. MTD, PageID# 150.[2] This argument ignores the holdings of nearly every appellate court to address standing in a data breach action, including the Sixth Circuit.

### i.    *Plaintiffs Have Suffered Concrete Injuries Caused by a Substantial Risk of Imminent Harm*

---

[1] Matco itself admits that "a choice-of-law analysis is unnecessary" (albeit for other, meritless reasons).

[2] Defendant does not challenge the standing of Plaintiffs Munger, Clarkson, or Gardner. The Court should deny Defendant's motion to dismiss for lack of standing on this basis alone. *See In re: Netgain Tech., LLC*, No. 21-CV-1210 (SRN/LIB), 2022 WL 1810606, at *4, 7 (D. Minn. June 2, 2022) ("A putative class action can proceed as long as one named plaintiff has standing…. And because only one plaintiff needs to have standing for the suit to move forward, the Court denies Netgain's motion to dismiss under Rule 12(b)(1).").

In *Galaria v. Nationwide Mut. Ins. Co.*, the Sixth Circuit reversed an order dismissing a data breach action for lack of standing. 663 Fed. Appx. 384 (6th Cir. 2016). The court held that plaintiffs who face a substantial risk of imminent harm from a data breach have standing to seek damages if they spend time or money mitigating the risk of harm—there is no requirement that they first suffer identity theft or fraud. *Id.* at 388–89. The Sixth Circuit held that a substantial risk of imminent harm existed there because the plaintiffs' Social Security numbers were allegedly exfiltrated by cybercriminals. *See id.* at 388 ("Plaintiffs allege that the theft of their personal data places them at a continuing, increased risk of fraud and identity theft …. There is no need for speculation where Plaintiffs allege that their data has already been stolen and is now in the hands of ill-intentioned criminals…. [A] reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints.").

Defendant fails to mention *Galaria*. Instead, Defendant relies on the Supreme Court's decision in *TransUnion LLC v. Ramirez*, which simply held that "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm." 141 S. Ct. 2190, 2210-11 (2021).[3] This holding is consistent with *Galaria*. *See, e.g., Brickman v. Maximus, Inc.*, No. 2:21-CV-3822, 2022 WL 16836186, at *4 (S.D. Ohio May 2, 2022) ("*Galaria* controls here …."); *Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2022 WL 4110319, at *5 (W.D. Ky. Sept. 8, 2022) ("*Galaria* is consistent with *TransUnion* …."); *Lochridge v. Quality Temp. Servs., Inc.*, No. 22-CV-12086, 2023 WL 4303577, at *4 (E.D. Mich. June 30, 2023) ("While the *Galaria* decision is

---

[3] In *TransUnion*, the plaintiffs brought claims for statutory damages under the Fair Credit Reporting Act after the defendant processed inaccurate credit reports for all class members, but only disclosed the reports of some of those class members to third-party businesses. *See TransUnion*, 141 S. Ct. at 2200. The Court found only those class members whose reports were disclosed had standing to pursue their claims for damages. *Id.* Unlike the class members in *TransUnion* who did not have their reports distributed, Plaintiffs here allege that their PII was accessed and exfiltrated by cybercriminals.

unpublished and not technically binding on this court, its analysis on the issue of standing is persuasive.").

Like *Galaria*, Plaintiffs Faduie and Lewis face a substantial risk of imminent harm because their names, Social Security numbers, and financial information were exfiltrated by cybercriminals. CAC at ¶¶ 1, 10, 14, 83-86, 98-99, 103-05, 109, 131-32, 137.[4] Moreover, other named Plaintiffs have alleged that their PII was misused following the Data Breach. CAC at ¶¶ 114, 123-124; *cf. Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 376 (1st Cir. 2023) ("That at least some information stolen in a data breach has already been misused also makes it likely that other portions of the stolen data will be similarly misused.").

Plaintiffs also allege that they have suffered (and will continue to suffer) detrimental effects from the risk of harm, including mitigation expenses, losses of time, and anxiety. CAC at ¶¶ 106, 108-11, 132-33, 136. These injuries with the risk of harm are sufficient confer standing. *Galaria*, 663 Fed. Appx. at 388–89; *see also Webb*, 72 F.4th at 377 ("We join other circuits in concluding that time spent responding to a data breach can constitute a concrete injury sufficient to confer standing ….") (collecting cases, including *Galaria*); *Bowen*, 2022 WL 4110319, at *5 (holding mitigation expenses were sufficient to confer standing, and that even if they weren't, "Plaintiffs still allege that they suffered emotional damages related to the breach, which *TransUnion* specifically recognized as a potential concrete injury conferring Article III standing.").

### ii. *Plaintiffs Have Been Injured from the Invasion of Their Privacy*

---

[4] Social Security numbers are "about the worst kind of private data that one could lose, at least when it comes to creating a risk of identity theft." *In re Pawn Am. Consumer Data Breach Litig.*, No. 21-CV-2554 (PJS/JFD), 2022 WL 3159874, at *4 (D. Minn. Aug. 8, 2022). Defendant tacitly acknowledged the risk to Plaintiffs by providing them with limited subscriptions to credit monitoring services. *Compare* CAC ¶ 94 *with Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015) ("It is telling in this connection that Neiman Marcus offered one year of credit monitoring and identity-theft protection to all customers …. It is unlikely that it did so because the risk is so ephemeral that it can safely be disregarded.").

Plaintiffs have also been injured from the invasion of their privacy. *See TransUnion*, 141 S. Ct. at 2204 ("Various intangible harms can also be concrete…. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion.").[5] Following *TransUnion*, courts widely agree that the theft of PII in a data breach causes an immediate injury analogous to invasion of privacy. *See, e.g., Bohnak v. Marsh & McLennan Cos., Inc.*, No. 22-319, 2023 WL 5437558 (2d Cir., Aug. 24, 2023) (selected for publication). In *Bohnak*, which involved the alleged theft of Social Security numbers, the Second Circuit compared *TransUnion*, stating:

> Like the Supreme Court in *TransUnion*, we have no trouble concluding that Bohnak's alleged harm is sufficiently concrete to support her claims for damages. Similar to the publication of misleading information about some of the plaintiffs in *TransUnion*, the core injury here—exposure of Bohnak's private PII to unauthorized third parties—bears some relationship to a well-established common-law analog: public disclosure of private facts. Bohnak's position is thus similar to that of the 1,853 class members who had standing in *TransUnion* based on the publication of misleading information to third parties without regard to whether the third parties used the information to cause additional harm.

*Id.* at *7 (internal citation omitted); *see also In re Pawn Am. Consumer Data Breach Litig.*, No. 21-CV-2554 (PJS/JFD), 2022 WL 3159874, at *3 (D. Minn. Aug. 8, 2022) (similar); *Leonard v. McMenamins, Inc.*, No. 2:22-CV-00094-BJR, 2022 WL 4017674, at *5 (W.D. Wash. Sept. 2, 2022) (similar). Plaintiffs have suffered the same invasion of privacy here.

### iii.  Plaintiffs Have Lost or Been Deprived of the Value of their PII

In addition to injuries caused by the risk of harm and loss of privacy, Plaintiffs have suffered concrete injury from the lost or diminished value of their PII. *See Finesse Express, LLC v. Total Quality Logistics, LLC*, No. 1:20-CV-235, 2021 WL 1192521, at *3 (S.D. Ohio Mar. 30, 2021) ("Courts have held that a loss in value of personal information supports a finding that a plaintiff has suffered an injury in fact."). Indeed, "the growing trend across courts that have

---

[5] Plaintiffs Faduie and Lewis plainly allege that they suffered losses of privacy. CAC at ¶¶ 108, 136, 181. Yet, Defendant does not address this injury in its motion.

7

considered this issue is to recognize the lost property value of this information." *In re Marriott Intl., Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020).

Contrary to the cases that Defendant cites, "the value of consumer [PII] is not derived solely (or even realistically) by its worth in some imagined marketplace where the consumer actually seeks to sell it to the highest bidder …." *Id.* at 462; *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1204 (S.D. Fla. 2022) ("[P]laintiffs need not reduce their … PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder.") (collecting cases). Rather, "the Data Breach devalued Plaintiffs' PII by interfering with their fiscal autonomy." *Smallman v. MGM Resorts Intl.*, 638 F. Supp. 3d 1175, 1191 (D. Nev. 2022); *see also In re Mednax*, 603 F. Supp. 3d at 1204 (similar). This Court should similarly recognize the inherent value of Plaintiffs' PII.

### iv. Plaintiffs Have Lost the Benefit of Their Bargain with Matco

Finally, Plaintiffs have lost the benefit of their bargain with Defendant. Plaintiff Lewis provided a monetary benefit to Defendant which (at least in part) should have been used to pay for reasonable data security. CAC at ¶¶ 131, 198. Plaintiffs Faduie and Lewis also provided Defendant with their PII, which is itself a valuable form of consideration. *See Perry v. Bay & Bay Transport. Servs., Inc.*, No. CV 22-973 (JRT/ECW), 2023 WL 171885, at *9 (D. Minn. Jan. 12, 2023) (selected for publication) ("Perry provided consideration by providing valuable property, his PI."). Plaintiffs Faduie and Lewis would not have entrusted Defendant with their PII or purchased its products had they known that their PII would not be adequately protected. CAC at ¶¶ 20, 110, 197-98. These allegations are sufficient to demonstrate Article III standing. *See In re Marriott*, 440 F. Supp. 3d at 464-66 (plaintiffs suffered benefit of bargain damages by paying for services that should have included adequate data security).

### C.    Plaintiffs Have Adequately Stated a Claim for Negligence

Plaintiffs have also alleged damages sufficient to state a claim for negligence. The Court should reach this holding for the same reasons that Plaintiffs have standing. *See Linman v. Marten Transport, Ltd.*, No. 22-CV-204-JDP, 2023 WL 2562712, at *4 (W.D. Wis. Mar. 17, 2023) ("Marten has alleged an injury in fact, so Linman's allegations are sufficient to state a claim for negligence."); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 WL 5937742, at *16 (D.N.J. Dec. 16, 2021) (similar).

Defendant, without engaging in a substantive analysis of any state's common law, disagrees, arguing that "the bar for pleading injury for standing is lower than that required to demonstrate actual damages to support a claim on the merits." MTD at PageID# 156. This ignores several recent decisions that have reached the opposite conclusion in the context of a data breach, including by the Second and Seventh Circuit Courts of Appeal. *See Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("To say that the plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then damages are available."); *accord Bohnak*, 2023 WL 5437558, at *10 ("Bohnak's alleged injury arising from the increased risk of harm *is* cognizable for standing purposes, and thus could support a claim for damages.") (emphasis in original). But regardless of the standard that applies, Plaintiffs have satisfied the damages element of a common law claim for negligence.

#### i.    *Plaintiffs Sufficiently Have Alleged Misuse of PII*

Downplaying the consequences of the Data Breach, Defendant argues that Plaintiffs "vaguely alleged they experienced attempted misuse of their personal information as a result of the Incident." MTD at PageID #154. Defendant's argument ignores Plaintiffs' allegations. Plaintiffs' Private Information was stolen and exfiltrated in the Data Breach (CAC at ¶¶ 1-12, 49-

52, 101), is now in the hands of cybercriminals (*id.* ¶¶ 103, 109, 119, 129, 137), and is being fraudulently used by cybercriminals (*id.* ¶¶ 50, 80, 92, 96, 101, 124, 180). As discussed in detail above, each Plaintiff alleges a substantial risk of imminent harm, diminution in value of Private Information, lost benefit of the bargain, invasion of privacy, lost time and expenses, and emotional distress.

Courts analyzing data breach cases have recognized, "Plaintiffs who allege they have suffered actual misuse of their personal information have clearly suffered an actual injury for which they may recover." *In re Banner Health Data Breach Litig.,* No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at *8 (D. Ariz. Dec. 20, 2017) (citing *Stollenwerk v. Tri- West Health Care Alliance*, 254 Fed. Appx. 664, 667-68 (9th Cir. 2007)). Here, Plaintiffs allege the stolen data is already being misused. CAC at ¶¶ 50, 80, 92, 96, 101, 124, 180.

Plaintiffs need not "wait until hackers commit identity theft or [financial] fraud" to file a lawsuit. *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016) (citations omitted); *see also Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 154 (3d Cir. 2022) (noting that misuse of PII is not required). The risk posed by the theft of financial data itself is sufficient. *See Bridgewater v. Americold Logistics, LLC*, No. 21-1348, 2022 WL 1442981, at *2 (C.D. Ill. May 6, 2022) (citing *Remijas*, 794 F.3d at 688 and *Lewert*, 819 F.3d 963).

Defendant ignores the severity of the Data Breach, instead citing *Allgood* for the proposition that Plaintiff's allegations are too speculative to show a connection between the misuse and the data breach. MTD at PageID #: 154. *Allgood* involved no direct allegations of exfiltration, the plaintiffs did "not present factual allegations that their personally identifiable information was taken", and the plaintiffs also did not "present allegations that the unauthorized actor was actually able to access their personally identifiable information." *Allgood v. PaperlessPay Corp.,* No. 3:20-

CV-516-MMH-MCR, 2022 WL 846070, at *10 (M.D. Fla. Mar. 22, 2022). Clearly, unlike *Allgood,* those requisite allegations have been made here. Defendant has admitted that PII was actually accessed and stolen by malicious cybercriminals. CAC at ¶¶ 40-42. Therefore, Defendant's reliance on *Allgood* is misplaced and sufficient allegations of misuse are present.

### ii. *Consequences from Risk of Harm*

Plaintiffs face a present and continuing risk of imminent harm from the Data Breach. Defendant argues that this risk alone is insufficient to cause a cognizable injury under state law. MTD, PageID # 155. However, as discussed above, Plaintiffs do not seek damages for the increased risk of harm alone—they seek damages for injuries caused by the risk of harm— including mitigation expenses, losses of time, and anxiety.

These injuries are widely recognized as sufficient to state a claim for negligence, including by courts proceeding under the law of Plaintiffs' home states. *See Gilbert v. BioPlus Specialty Pharm. Servs., LLC*, No. 6:21-CV-2158-RBD-DCI, 2023 WL 3555006, at *2 (M.D. Fla. Mar. 3, 2023) ("Damages require a showing of 'some actual harm.' Mitigation expenses, time spent responding to the breach, and the like establish actual harm.") (internal and external citations omitted); *Opris v. Sincera Reprod. Med.*, No. CV 21-3072, 2022 WL 1639417, at *7 (E.D. Pa. May 24, 2022) (similar); *Tracy v. Elekta, Inc.*, No. 1:21-CV-02851-SDG, 2023 WL 4677021, at *3-4 (N.D. Ga. Mar. 31, 2023) (selected for publication) (similar); *In re Marriott Intl., Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d at 494.[6]

Plaintiffs are also entitled to money for future credit monitoring expenses because they face a substantial risk of harm that will continue indefinitely. *See* CAC at ¶¶ 10, 12, 83-86, 113,

---

[6] Defendant cites *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 7 (D.D.C. 2019), *on reconsideration in part*, 518 F. Supp. 3d 43 (D.D.C. 2021), and *Everhart v. Colonial Pipeline Co.*, No. 1:21-CV-3559-MHC, 2022 WL 3699967, at *2-5 (N.D. Ga. July 22, 2022). However, neither case involved the theft of Social Security numbers.

122, 132. In evaluating the need for credit monitoring services, courts have analogized these damages to medical monitoring cases, holding that "where a state allows for medical monitoring damages… and a plaintiff has sufficiently alleged a threat of identity theft… a plaintiff may seek to recover expenses to purchase credit monitoring services." *Aspen Am. Ins. Co. v. Blackbaud, Inc.*, No. 3:22-CV-44 JD, 2022 WL 3868102, at **8 (N.D. Ind. Aug. 30, 2022) (citing *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp 2d 942, 965 (S.D. Cal. 2014)); *see also Elmer v. S.H. Bell.Co.,* 127 F. Supp.3d 812, 825 (N.D. Ohio 2015) ("Although medical monitoring is not a cause of action, under Ohio law, it is a form of damages for an underlying tort claim."). Accordingly, due to the risk of harm, Plaintiffs may recover the future costs of credit monitoring as well.

### iii.  Diminished Value of PII

As discussed above, Plaintiffs have suffered injury from the lost or diminished value of their PII. *See Finesse Express*, 2021 WL 1192521, at *3. This injury satisfies the damages element of a negligence claim. *See, e.g., Opris*, 2022 WL 1639417, at *8 ("Because Plaintiffs have alleged loss of value to their PII …, this assertion further supports that they suffered damages as a result of Sincera's negligence."); *Feins v. Goldwater Bank NA*, No. CV-22-00932-PHX-JJT, 2022 WL 17552440 (D. Ariz. Dec. 9, 2022) (similar); *In re Marriott*, 440 F. Supp. 3d at 494-95 (similar).

### iv.  Benefit of the Bargain

As discussed above, Plaintiffs provided money and PII for data security they did not receive. Defendant argues that "no plaintiff alleges he actually paid for a service from Matco. Munger and Lewis allege they purchased tools from Matco and Employee Plaintiffs do not allege they paid any money to Matco for any reason." MTD at PageID# 159. However, this ignores that Plaintiffs allege part of the money that Munger and Lewis paid to Defendant was supposed to be

used for data security, and that all Plaintiffs provided Defendant with their PII, which is itself a valuable form of consideration. *See Perry*, 2023 WL 171885, at *9 (PII is "valuable property").

Defendant also argues that Plaintiffs fail to provide facts that are specific enough to support or explain these damages. In *Smallman*, the District of Nevada rejected a similar argument, noting that the defendant "relie[d] upon a line of cases which required more specific factual allegations showing how data security was a part of the bargain or how much of the money spent was for data security." *Smallman*, 638 F. Supp. 3d at 1190. However, the court held that it found "more persuasive the line of cases that accept at the pleading stage more general factual allegations about the plaintiff's expectations for data security and the contours of the parties' bargain." *Id.* (quoting *In re Intel Corp. CPU Mktg., Sales Practices & Prods. Liability Litig.*, No. 3:18-2828, 2020 WL 1495304, at *8 (D. Or. Mar. 27, 2020)). The court held that paying consideration for services that should have included adequate data security is sufficient to support a negligence claim. *Id.*; *see also In re Marriott*, 440 F. Supp. 3d at 494-95 (similar). The Court should follow these cases and hold that the injury caused by the lost benefit of bargain is sufficient to state a claim for negligence.

### v. Loss of Privacy

The injuries to Plaintiffs' privacy are also sufficient to support a claim for negligence. *See* CAC at ¶¶ 108, 118, 128, 136, 181; *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 587 (N.D. Ill. 2022) ("There can be no dispute that Plaintiffs have alleged present injuries or damages; for instance, all allege experiencing emotional harms such as anxiety and increased concerns for the loss of privacy."); *Smallman*, 638 F. Supp. 3d at 1188 (declining to apply economic loss rule because "it is difficult to conceive how the dissemination of an individual's PII does not necessarily diminish their control over their digital and physical identity. Such an invasion implicates non-economic harms."); *Smith v. A.B. Bonded Locksmith, Inc.*, 143 Ohio App.3d 321,

13

330, 757 N.E.2d 1242 (1st Dist. 2001) ("[I]nvasion of one's right to privacy might occur negligently as well as intentionally."). Defendant does not address this alleged form of injury, yet it is an independent reason to deny Defendant's motion to dismiss the negligence claim.

### D.    Plaintiffs Have Adequately Stated a Claim for Breach of Implied Contract

"A breach of implied contract claim shares the same elements of an express contractual claim, 'offer, acceptance, consideration, and a meeting of the minds.'" *Foster v. Health Recovery Servs.*, Inc., 493 F. Supp. 3d 622, 640 (S.D. Ohio 2020) (citations to Ohio law omitted); *Randleman v. Fid. Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812, 817 (N.D. Ohio 2006) (same). "The terms of an implied in fact contract 'are determined by the Court based upon the facts and circumstances surrounding the transaction.'" *Id*.; *Macula v. Lawyers Title Ins. Corp*., No. 1:07 CV 1545, 2008 WL 3874686, at *3 (N.D. Ohio Aug. 14, 2008) (citing Ohio law). Under Ohio law, implied contracts "are inferred as a matter of fact from the evidence offered of the circumstances surrounding the parties, making it reasonable that a contract existed between them by tacit understanding." *Gebhart v. United States*, 172 Ohio St. 200, 210, 174 N.E.2d 615 (1961). Here, Defendant merely argues that the Customer Subclass Plaintiffs do not make allegations (at the pleadings stage) about a "contract for data security," and that these Plaintiffs and Defendant did not reach a meeting of the minds sufficient for mutual assent. MTD, PageID #: 159. This precise argument was rejected by the court in *Foster*, with the plaintiff in that case aptly noting that "no such details are necessary when pleading an implied contract, since the very nature of an implied contract claim means the existence of a contract is necessarily in dispute." *Foster*, 493 F. Supp. 3d at 640.

The *Foster* court found the implied contract claim to be properly stated where plaintiff alleged they were required to provide their personal information in exchange for certain services.

14

*Id.* The same allegations are made here. The CAC alleges that the Customer Subclass Plaintiffs were "required to provide" their PII in conjunction with the purchase of goods from Matco, and that Defendant "required the submission of and voluntarily accepted the PII as part of its business." CAC, ¶¶ 31, 33, 188. The Customer Subclass Plaintiffs allege that Defendant derives a substantial economic benefit from the PII that it collects, and that without collecting the PII, it would be unable to sell or manufacture automobile parts. *Id.*, ¶ 66. The CAC alleges in collecting the PII as part of the purchases, Defendant assumed duties (including contract duties) to protect the PII it collects. *Id.*, ¶ 67. The allegations contain all the necessary elements of an implied contract claim. Matco offered its tools for sale with the necessary requirement that PII be submitted in connection with the purchase. The Customer Plaintiffs accepted that offer and submitted their PII (and paid money) as valuable consideration for the tools and also for data security. A meeting of the minds occurred, as Matco knew or should have known it was responsible for protecting the data from disclosure. *Id.*, ¶ 67.

Numerous courts have found implied contract claims properly plead in data breach cases similar to this. *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,* No. 3:19-cv-2284, 2020 WL 2214152, at *5 (S.D. Cal. May 7, 2020*); see also In re Arby's Rest. Grp. Inc. Litig.,* No. 1:17-CV-0514, 2018 WL 2128441, at *16 (N.D. Ga. Mar. 5, 2018) ("Several federal courts have recognized implied-in-fact contract claims in data breach cases"). As one court explained: "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of . . . sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016); s*ee also Carroll v. Lee*, 148 Ariz. 10, 13 (1986) (consideration need not be monetary, may consist of a promise for a promise, and need not be of

15

like or identical value); *Resnick v. AvMed, Inc.*, 693 F.3d 117 (11th Cir. 2012). Where, as here, "a person hands over sensitive information, in addition to receiving a…service, they presumably expect to receive an implicit assurance that the information will be protected." *Farmer v. Humana, Inc.*, No. 8:21-CV-1478-MSS-SPF, 2022 WL 732126, at *6 (M.D. Fla. Jan. 25, 2022); *see also Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 159 (1st Cir. 2011) (similar).

There is also an implied contract plead as to the Employee Subclass. Defendant misreads the CAC, which doesn't allege that the Employees provided their PII as part of a purchase, but rather "during the course of employment with Defendant." CAC at ¶ 31. The Complaint further alleges that the Employees "were required to fill out various forms, including without limitation employment paperwork and applications, tax documents . . . and employment documents." *Id*. These circumstances governing the relationship between an employer and employees and their dependents give rise to an implied contract that PII entrusted to an employer in order to create and facilitate the employment relationship will be adequately protected from foreseeable security risks. In the data breach context, the determination as to "the terms of the alleged implied contract is a factual question that a jury must determine" and implied contact claims are frequently upheld on motions to dismiss in data breach cases related to employment. *See*, *e.g*., *In re Target Corp. Data Sec. Breach Litig*., 66 F. Supp. 3d 1154, 1176-77 (D. Minn. 2014); *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (similar); *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *9 (E.D. Mo. Aug. 3, 2021) (similar). In those cases, as here, companies failed to adequately protect PII related to employment from foreseeable cyberattacks. Thus, the Employee Subclass also properly alleges a breach of an implied contract.

### E.      Plaintiffs Have Adequately Stated a Claim for Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred by

a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Daily v. Craigmyle & Son Farms, LLC*, 177 Ohio App.3d 439, 449, 894 N.E.2d 1301 (4th Dist. 2008); *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

Again, *Foster, supra*, rejects the arguments made by Defendant here. In *Foster*, the court denied a similar motion to dismiss an unjust enrichment claim, reasoning that:

> Plaintiff has alleged all of the elements of an unjust enrichment claim. Plaintiff alleges that he conferred a benefit on Defendant by paying Defendant for health care services pursuant to an implied contract which required Defendant to safeguard Plaintiff's sensitive medical information. Plaintiff alleges that Defendant failed to safeguard this information but has retained the payment made by Plaintiff for those services. Accordingly, Plaintiff has stated a claim for unjust enrichment.

*Foster*, 493 F. Supp. 3d at 641. Plaintiffs' allegations are substantially the same here. Plaintiffs provided Matco with the benefit of both money paid (in the case of the Customer Subclass) and their valuable PII. CAC ¶ 198. These benefits were accepted by Defendant with knowledge of the benefits, and the knowledge that Matco was required to safeguard the PII. *Id.* ¶ 199. And Plaintiffs allege that it would be inequitable for Defendant to retain these benefits where it failed to provide reasonable data security, safeguards, and protections. *Id.* ¶¶ 200-201.

Courts routinely uphold unjust enrichment causes of action in data breach cases such as this. *See*, e.g., *Bowen*, 2022 WL 4110319, at *4; *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1330 (N.D. Ga. 2019); *In re Cap. One Consumer Data Sec. Breach Litig.,* 488 F. Supp. 3d 374, 412 (E.D. Va. 2020); *In re Target,* 66 F. Supp. 3d at 1178; *In re Rutter's Inc. Data Sec. Breach Litig.,* 511 F. Supp. 3d 514, 539 (M.D. Pa. 2021).

Applying analogous elements, courts also have upheld claims for unjust enrichment in data breach case with employee allegations similar to the ones made here. *Sackin*, 278 F. Supp. 3d at 751. The *Sackin* court concluded all three elements of unjust enrichment were adequately pled

because plaintiffs alleged the defendant "received the benefits of Plaintiffs' labor," the defendant "was enriched at plaintiffs' expense when it chose to cut costs by not implementing security measures to protect plaintiffs' PII which Defendant required or obtained in the course of plaintiffs' employment," and "it would be inequitable and unconscionable to allow" the defendant to retain such benefits. *Id.* Here, Plaintiff Faduie alleged that he was required to provide and did provide his PII to Matco in the course of his employment. CAC at ¶ 99. Plaintiff Faduie provided his labor during that time, thus bringing the unjust enrichment claims pleaded here for the Employee Subclass into line with cases like *Sackin*.

### F.    Plaintiffs Have Adequately Stated a Claim for Negligence Per Se

#### i.    *Plaintiffs Munger and Lewis sufficiently allege a "consumer transaction" under the CSPA*

Plaintiffs' negligence *per se* claim explicitly recognizes that the CSPA "prohibits 'unfair or deceptive act[s] or practice[s] in connection with a consumer transaction." CAC at ¶ 207. Plaintiffs Munger and Lewis each allege that he "purchased tools from Defendant, using credit, prior to the Data Breach." *Id.* ¶¶ 112, 131. Neither Plaintiff Munger nor Plaintiff Lewis alleges that the purchases were made for any person or entity other than themselves or that the credit used was for anyone other than themselves. *Id.*

Defendant nonetheless contends that Plaintiffs have failed to state a claim because they do not explicitly allege that their purchases of tools using credit were "for purposes that are primarily personal, family, or household." MTD, PageID #162. Defendant does not, however, cite any allegation supporting that these purchases were not for such purposes or that the credit was extended to any person or entity other than Plaintiffs Munger and Lewis in their individual capacities.  Given the overarching allegations throughout the Complaint that the Data Breach impacted consumers and that Plaintiffs Munger and Lewis are among these consumers, they have

18

plausibly alleged that their purchases were "for purposes that are primarily personal, family, or household" and not for commercial or business purposes.

Notably, in *Bucy v. Pennymac Loan Servs.*, LLC, No. 2:15-CV-2909, 2016 WL 5719804 (S.D. Ohio Sept. 30, 2016) (Sargus, C.J.), the court rejected the defendant's request to dismiss a CSPA claim for failure to allege a "consumer transaction." *Id.* at *11. The court deemed it sufficient that the plaintiff alleged he obtained a mortgage from the defendant secured by his primary residence. *Id.* Here, it is similarly sufficient that Plaintiffs' Munger and Lewis allege they purchased tools using credit.

### ii. *Plaintiffs Lewis and Faduie sufficiently allege negligence per se premised on violations of Section 5 of the FTC Act*

Defendant argues that, under the laws of Florida, Ohio, Pennsylvania, and Wyoming, a negligence *per se* claim may not be predicated on a violation of Section 5 of the FTC Act. Notwithstanding that Plaintiff Lewis alleges he is a resident and citizen of Georgia, Defendant does not address Georgia law.

"[C]ourts addressing this exact issue under Georgia law in the data breach context have found that Section 5 of the FTC Act 'is a statute that creates enforceable duties.'" *Tracy*, 2023 WL 4677021, at *6 (quoting *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d at 478-82). "There is an abundance of case law supporting this position, and this Court agrees that Section 5 imposes certain duties." *Id.* (citing *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1375-76 (N.D. Ga. 2021); *Equifax, Inc. Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1175 (N.D. Ga. 2019) ("holding that the plaintiffs' complaint 'adequately pleads a violation of Section 5 of the FTC Act, that the [p]laintiffs are within the class of persons intended to be protected by the statute, and that the harm suffered is the kind the statute meant to protect'"); *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441, at *7–*9 (same); *In re: The Home Depot,*

*Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016) ("same")). Thus, Plaintiff Lewis's negligence *per se* claim should proceed to the extent it is premised on Section 5 of the FTC Act.

As for Pennsylvania law, courts applying it have declined to dismiss a negligence *per se* claim premised on Section 5 of the FTC Act, deeming the "private right of action" issue better addressed at summary judgment or during pre-trial practice. *See, e.g.*, *Opris*, 2022 WL 1639417, at *9-10; *In re Rutter's*, 511 F. Supp. 3d at 531-32. Moreover, in reasoning that a negligence *per se* claim is due for dismissal as subsumed within a negligence claim, courts have granted leave to amend to incorporate the negligence *per se* allegations into the negligence claim. *See, e.g.*, *In re Rutter's*, 511 F. Supp. 3d at 531. Plaintiff Faduie respectfully requests leave to do the same here.

### G.  Plaintiffs Are Entitled to Declaratory Judgment

Plaintiffs recognize that declaratory judgment is not an independent cause of action. Nonetheless, as one court has explained in the data breach context,

> [A]lthough plaintiff styled her claim for declaratory relief as a separate count, that is not fatal to her claim. In Count V, plaintiff incorporates by reference her earlier allegations and refers to the specific substantive provisions under which she is allegedly entitled to declaratory relief . . . Plaintiff's claim for declaratory relief is thus derivative of her substantive claims and dependent on whether her underlying claims proceed.

*Rand v. Travelers Indem. Co.*, No. 21 CV 10744 (VB), 2022 WL 15523722, at *10 (S.D.N.Y. Oct. 27, 2022). Plaintiffs submit that their declaratory judgment count should not be dismissed to the extent is it derivative of their substantive claims that are allowed to proceed.

### V.  CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in all respects.[7]

---

[7] Should the Court disagree, Plaintiffs respectfully request leave to amend any portion of the CAC that is dismissed. *See* *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 347 (7th Cir. 2018) ("Unless it is certain from the face of the

Date: September 18, 2023                    Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (0085579)
Dylan J. Gould (0097954)
Jonathan T. Deters (0093976)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Tel: 513.651-3700
tcoates@msdlegal.com
dgould@msdlegal.com
jdeters@msdlegal.com

David K. Lietz (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20115
Phone: (866) 252-0878
dlietz@milberg.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Fax: (865) 522-0049
gklinger@milberg.com

Jesse A. Shore (0091730)
**Morgan & Morgan, Kentucky PLLC**
300 Madison Avenue, Suite 200
Covington, KY 41011
Telephone: (859) 899-8786
Facsimile: (859) 899-8807
jshore@forthepeople.com

Ryan D. Maxey (*pro hac vice*)
**MORGAN & MORGAN COMPLEX
BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

---

complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.") (citation omitted).

(813) 223-5505
rmaxey@ForThePeople.com

Matthew R. Wilson (Bar No. 0072925)
Michael J. Boyle, Jr. (Bar No. 0091162)
Jared W. Connors (Bar No. 0101451)
**MEYER WILSON CO., LPA**
305 W. Nationwide Blvd.
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
mwilson@meyerwilson.com
mboyle@meyerwilson.com
jconnors@meyerwilson.com

Samuel J. Strauss*
Raina Borrelli*
**TURKE & STRAUSS LLP**
613 Williamson St., #201
Madison, WI 53703
P: (608) 237-1775
sam@turkestrauss.com
raina@turkestrauss.com

*Attorneys for Plaintiffs and the Proposed Class*

*\* pro hac vice application forthcoming*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 18, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Terence R. Coates*
Terence R. Coates (0085579)